UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRANCH BANKING AND )
TRUST COMPANY, )
 )
      Plaintiff )
 ) Case No. 3:11-0301
v. ) Judge Sharp/Brown
 )
FIDELITY NATIONAL TITLE INSURANCE )
COMPANY, 1ST TRUST TITLE, INC., )
and DELAINA THOMPSON, )
 )
      Defendants )

**INITIAL CASE MANAGEMENT ORDER**

Pursuant to Local Rule 16.01(d)(2), the following Initial Case Management Plan is adopted.

**1. Jurisdiction:** Jurisdiction and venue are not disputed. The Defendant, Fidelity National Title Insurance Company (hereinafter "FNTIC") has filed a Motion to Dismiss challenging the Court's subject matter jurisdiction due to ripeness concerns which has been briefed and is pending. An adversary action involving the priority of the Plaintiff's lien has a scheduled Motion for Summary Judgment deadline of August 16, 2011 and a scheduled trial date of October 5, 2011, in a related bankruptcy case.

There is a motion for entry of default as to 1st Trust Title and Delaina Thompson (Docket Entry 26). It appears that Ms. Thompson has filed a Chapter 7 bankruptcy in the Middle District of Tennessee, Case 3:11-BK-05476, and accordingly, proceedings as to her are stayed.

**2. Plaintiff's theory of the case:** The Complaint in this matter arises out of an $18,700,000.00 commercial real estate closing in which the Plaintiff, Branch Banking and Trust Company ("BB&T") was the lender for the purposes of the renovation of the Hotel Indigo and related property in downtown Nashville. The Defendant 1st Trust Title, Inc. (1st Trust)[1] was the disbursing agent for the transaction and the title agent in connection with the issuance of title insurance in connection with the transaction. The Defendant, Fidelity National Title Insurance Company was the issuer of the title insurance policy in connection with the transaction.

The basic facts underlying the plaintiff's case are not in dispute. They are: Prior to the closing of the loan, the property which was to secure the loan was the subject of an existing deed of trust in the amount of approximately $4.2M which is described in the Complaint as the "Prudential Deed of Trust" which was to be paid and satisfied at the closing. As a part of the loan transaction BB&T's borrower was required to pay $5,176,507.00 as its equity funding requirement. At the time of the loan closing 1st Trust represented to BB&T that the $5,176,507.00 had been paid. The $5,176,507.00 equity funding requirement of the borrower was not

---

[1] The Defendant, Delaina Thompson, was the officer of 1st Trust that handled the closing on its behalf.

paid at closing. The "Prudential Deed of Trust" was not satisfied at closing.

BB&T's claims can be divided into three categories: Claims arising from the Title Policy and the handling of the claim made by BB&T thereunder (the First, Fifth and Seventh Causes of Action); Claims directly against Fidelity for Fraud and Misrepresentation ( the Second and Sixth Causes of Action), and Claims against Fidelity and 1st Trust arising from 1st Trust's actions as the disbursing agent for which Fidelity is asserted to be liable on agency theories (the Third and Fourth Causes of Action).

As to the title policy related causes of action, BB&T seeks a determination of liability of Fidelity under the title insurance policy and the payment of the outstanding priority lien. As to the remaining causes of action, BB&T asserts that its loan would not have been made but/for the tortious conduct and that it is entitled to damages in the amount of its outstanding loan, $17.5M.

**3. FNTIC's theory of the case:** This action involves two high-rise mixed-use buildings located at 301 Union Street (also referred to as 235 3rd Avenue North) and 315 Union Street, Nashville, Tennessee. At the closing of the BB&T Loan, 1st Trust represented by email to BB&T that it had received the cash equity. 1st Trust closed the BB&T Loan without funds sufficient to pay off the BofA trust deed. Union Street did not make its cash equity

available to the closing. The renovation of the subject real property was completed by Lineberry, using BB&T's funds.

1st Trust, as FNTIC's title issuing agent, issued a lender's title insurance policy to BB&T. The BB&T Policy did not except from coverage the BofA trust deed. The BB&T Policy insured that BB&T's trust deed was in first priority position, subject to no other prior liens, notwithstanding the fact that 1st Trust knew that the existing BofA deed of trust had not been repaid and released. In an effort to conceal the fact that the BofA trust deed was not paid in full through the BB&T escrow, either Union Street, 315 Union Street Holdings, LLC, or 1st Trust, continued to remit payments on the BofA trust deed for over two years, never notifying FNTIC that not all the closing conditions had been met and that the BB&T trust deed was not in first priority position.

By concealing the material information, 1st Trust and others caused FNTIC to act to its detriment by issuing policies that did not accurately reflect the chain of title as of the date they were issued. However, FNTIC is not liable as BB&T has not yet suffered damage. Until such time as the claim has been resolved, there has been no showing that BB&T is damaged or that FNTIC has liability in this matter. If it is determined that the plaintiff is not liable for damages under the title insurance contract, then there is no claim against this defendant which is actionable.

4. **Identification of the issues:**

Issues resolved: Jurisdiction and Venue.

Issues remaining unresolved: Liability and Damages.

**5. Need for other claims or special issues under Rules 13-15, 17-21, and Rule 23 of the Federal Rules of Civil Procedure:** None anticipated at this time.

**6. Witnesses, if known, subject to supplementation by each party. Plaintiff:** The Plaintiff anticipates that virtually all of the factual issues in this matter will be the subject of stipulated or admitted facts. The Plaintiff anticipates that witnesses will be necessary as to issues related to the agency status between Fidelity and 1st Trust and the claims handling/practices of 1st Trust. In connection with these issues, BB&T would anticipate the following witnesses:

    a. Jerry Grand (as an adverse witness through deposition);

    b. Delaina Thompson (as an adverse witness through deposition);

    c. John W. Boykin (BB&T's counsel for the closing);

    d. 30(b)(6) designated representative(s) of Fidelity

**Defendant FNTIC:** The Defendant would anticipate the following witnesses:

    a. 30(b)(6) designated representative(s) of BB&T

    b. D. Mark Lineberry

**7. Initial Disclosures and Staging of Discovery:** FNTIC has filed a Motion to Dismiss which has been briefed and is pending before this Court which contests the subject matter jurisdiction of

this Court. The parties are in agreement that this Motion should be determined prior to further proceedings related to discovery. Assuming that the Motion to Dismiss is denied, the Plaintiff believes that this matter is easily divisible between coverage issues under the title policy and damages issues as to the substantive causes of action and would request an expedited discovery period on the coverage issues (no more than 60 days) and a subsequent hearing/trial on an equally expedited basis as to the coverage issues. FNTIC disagrees and would request that the discovery period follow that of the *FNTIC v. Lineberry* lawsuit.

Prior to filing any discovery-related motion the parties will schedule and conduct a telephone conference with the Magistrate Judge.

**8. Dispositive motions:** There is a Motion to Dismiss pending before this Court which has been briefed through the response and reply stage. At the request of the Plaintiff they are allowed to file a sur reply, limited to **five pages**, on or before **June 8, 2011.**

Although the date of the resolution of the Motion to Dismiss is not known, the stay on discovery is lifted.

**9. Other Deadlines and Subsequent case management conferences:** As soon as a decision has been reached on the pending motion to dismiss, additional deadlines will be set when a subsequent case management conference is held.

**10. Alternate Dispute Resolution:** The parties advised that alternative dispute resolution might be appropriate in the early stage. The Magistrate Judge is more than willing to refer this matter to another Magistrate Judge or the parties may seek a private mediator at any point.

**11. Consent to trial before the Magistrate Judge:** The parties have conferred as to this issue and have not reached an agreement that this matter should be tried before the Magistrate Judge.

**12. Target Trial Date:** Due to the pendency of the Motion to Dismiss and the need for a subsequent case management conference a specific trial date is not being recommended at this point.

It is so **ORDERED.**

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge