UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRANCH BANKING AND TRUST COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:11-cv-00301 |
| v. | ) ) | |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, 1ST TRUST TITLE, INC., and DELAINA THOMPSON, | ) ) ) ) ) | JUDGE SHARP MAGISTRATE JUDGE BROWN |
| Defendants. | ) | |

## MEMORANDUM

Defendant Fidelity National Title Insurance Company ("Fidelity" or "Defendant") filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket Entry No. 16), to which Plaintiff Branch Banking and Trust Company ("Branch Banking" or "Plaintiff") filed a response (Docket Entry No. 24), Defendant filed a reply (Docket Entry No. 27), and Plaintiff filed a surreply (Docket Entry No. 40). For the reasons discussed herein, the Court will deny Defendant's motion to dismiss.

## FACTS

Defendant's motion implicates the facts of three different cases: this action, a consolidated action in the United States Bankruptcy Court for the Middle District of Tennessee,[1] and another action that Defendant has filed in this court.[2] The disposition of

---

[1] The bankruptcy action consists of bankruptcy petitions 3:10-bk-13106 and 3:10-bk-13107 and adversary proceeding 3:11-ap-00204.

[2] Fidelity is the plaintiff in civil action number 3:11-cv-00253.

1

Defendant's motion to dismiss requires the Court to review the allegations of each of these cases.[3]

I.   **The Present Action**

According to the allegations of the complaint, in August 2008, Branch Banking loaned $18.7 million to 315 Union Street Holdings, LLC and Union Street Plaza Operations, LLC (collectively, "Borrowers") for renovation and development of real property located at 301 and 315 Union Street in Nashville. The loan was secured by a deed of trust on the real property. Acting within the scope of its agency, 1st Trust agreed to handle disbursements of the loan funds. As part of the agreement to close the loan, the Borrowers would pay a "Remaining Equity Requirement" of $5,176,507 and would apply more than $4 million of the closing funds to satisfy another outstanding deed of trust on the property originally held by Prudential Mortgage Capital Company, LLC ("Prudential").[4] Branch Banking obtained title insurance through Fidelity and its authorized agent, 1st Trust Title, Inc. ("1st Trust"). The policy insured against loss or damage arising, among other events, from the priority of any encumbrance over Branch Banking's lien. Fidelity's policy did not make exception for Prudential's lien. Branch Banking continued to fund the loan on a periodic basis, relying on the representation that the Prudential lien had been paid and satisfied and that Branch Banking held the first priority lien on the property. Despite the requirements of the loan closing documents,

---

[3] In adjudicating a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence beyond the complaint. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Unite Here Int'l Union v. Pala Band of Mission Indians*, 583 F. Supp. 2d 1190, 1194 (S.D. Cal. 2008). For this motion, all of the facts are taken from allegations in court pleadings and attached exhibits, whether filed in this case or in another action.

[4] Pleadings in other cases indicate that, although Prudential originally held the lien, it had been assigned to successors-in-interest by the time of the events in this litigation. Nonetheless, the Court will refer to this encumbrance as the "Prudential lien."

Prudential's lien was not, in fact, paid and satisfied, nor had the Borrowers ever paid the Remaining Equity Requirement.

The complaint further alleges that the Borrowers defaulted on the loan in October 2010. Upon an examination of the title, Branch Banking learned for the first time that the Prudential lien remained outstanding. Branch Banking then filed a claim with Fidelity for defense and indemnity under the title insurance policy. Branch Banking also initiated a complaint in Tennessee Chancery Court against the Borrowers for appointment of a receiver ("receivership action"). Prudential appeared in the receivership action to assert the priority of its lien. Fidelity did not provide Branch Banking with counsel in the receivership action and has never acknowledged an indemnification obligation under the title policy. Acting on its own behalf, Fidelity has attempted to negotiate a reduced payment to satisfy the Prudential lien. If Branch Banking itself pays the outstanding balance under the Prudential lien, Fidelity has stated that it will deny coverage under the policy on the basis of that payment.

Branch Banking then filed the present action on March 31, 2011. Fidelity filed the pending motion to dismiss for lack of subject matter jurisdiction on May 12, 2011.

## II.  Consolidated Bankruptcy Actions

The Borrowers filed for Chapter 11 bankruptcy on December 3, 2010. The holder of the Prudential lien filed a motion for relief from the automatic stay as to the collection of rental income from the commercial and residential tenants of 315 Union Street. Later, in March 2011, the holder of the Prudential lien initiated an adversary proceeding against Branch Banking, the Chapter 11 trustee, and the Borrowers. In the adversary proceeding, the holder of the Prudential lien seeks a declaratory judgment that its lien on and interest

in the rental income from the 315 Union Street building are superior to the claims of Branch Banking or the Borrowers.

In March 2011, Fidelity began providing representation for Branch Banking in the bankruptcy proceedings. The bankruptcy court has issued a Pretrial Order consolidating the adversary proceeding with the issues in the motion for relief from the automatic stay. (Docket Entry No. 16-2.) Trial in the bankruptcy court is set to begin on October 5, 2011.

## III. Fidelity Action

Nearly two weeks before Branch Banking filed the present action, Fidelity filed its own action in this Court against 1st Trust and two individual defendants ("Fidelity action"). The amended complaint in the Fidelity action alleges causes of action in tort and contract arising from 1st Trust's closing the escrow on Branch Banking's loan without the prior satisfaction of the Prudential lien and then allowing the Borrowers to use Branch Banking's funds to renovate the real property. The amended complaint further alleges that, if Fidelity had known about the failure to satisfy Prudential's lien, it would not have issued through 1st Trust the title insurance policy showing Branch Banking in first priority position. 1st Trust's conduct "potentially expos[es] [Fidelity] to millions of dollars of liability under the [Branch Banking] Policy." (Civil Action No. 3:11-cv-00253, Docket Entry No. 10 ¶ 37.) Discovery in the Fidelity action is ongoing.

## ANALYSIS

## I. Subject Matter Jurisdiction Standard

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction. Challenges to subject matter jurisdiction may consist either of a "facial attack" or "factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). A

facial attack challenges the sufficiency of the pleading. *Id.* at 375-76. By contrast, a factual attack challenges the actual existence of subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In deciding the factual attack, the Court may weigh the evidence and exercise discretion to consider affidavits and documents. *Id.*; *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

## II.   Application to This Action

Fidelity contends that the Court lacks subject matter jurisdiction over this action because it is not ripe. According to Fidelity, because the title policy indemnifies Branch Banking against title defects, Fidelity's liability under the policy depends on a determination of the priority and scope of the Prudential lien. "Priority" means whether the Prudential lien is senior to Branch Banking's lien. "Scope" means whether the Prudential lien applies to one or both buildings of the subject real property. Fidelity maintains that the determinations concerning the liens will take place in the trial of the bankruptcy proceedings and that the Court should dismiss this action in the meantime. Because Fidelity challenges the actual existence of subject matter jurisdiction, the Court construes Fidelity's motion as a "factual attack" and considers evidence outside of Branch Banking's complaint.

"The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Ripeness protects courts from "premature adjudication" of legal issues and prevents entanglement in abstract legal controversies. *Warshak v. United States*, 532 F.3d

521, 525 (6th Cir. 2008). Ripeness is determinative of jurisdiction, and federal courts must dismiss unripe claims for lack of subject matter jurisdiction. *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992); *Layman Lessons, Inc. v. City of Millersville, Tenn.*, 636 F. Supp. 2d 620, 632 (M.D. Tenn. 2008). The Sixth Circuit has set forth three issues to consider in determining ripeness: (1) the likelihood that the alleged harm will come to pass, (2) whether the factual record is developed enough to adjudicate the matter fairly on the merits; and (3) the hardship for the parties if the court decides to deny judicial relief at this stage of the proceedings. *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 751 (6th Cir. 2003).

  A. **Second Through Sixth Causes of Action**

Upon review of the complaint, the Court finds that most of Branch Banking's claims are ripe simply because they do not implicate the priority or the scope of the Prudential lien. Branch Banking's second cause of action for fraud and misrepresentation and sixth cause of action for negligent misrepresentation are based on Fidelity and 1st Trust allegedly representing to Branch Banking that the Prudential lien had been satisfied. The question of what Defendants represented concerning the payment of the Prudential lien is separate from the issue of the seniority of the Prudential lien and the buildings that it covers. Therefore, the resolution of these causes of action does not hinge on the issues set for trial in the bankruptcy court. Similarly, the third cause of action for fraud and misrepresentation and the fourth cause of action for breach of contract are based on 1st Trust, as Fidelity's agent, allegedly failing to collect the Remaining Equity Requirement while representing that it had received that money. The Remaining Equity Requirement is a financial obligation distinct from the Prudential lien and memorialized in documents other than the title insurance policy. Finally, the fifth cause of action for violation of the Tennessee Consumer Protection Act arises out of Fidelity's allegedly unfair claims

practices—*e.g.*, demands that Branch Banking produce documents not required by the policy—rather than the merits of Branch Banking's claim. A cause of action based on the way the insurer handles and processes the claim for indemnification does not hinge on the merits of the insured's underlying claim.

B. **First and Seventh Causes of Action**

Therefore, Fidelity's ripeness argument in fact implicates only two of the seven causes of action pled in the complaint: the first cause of action for a declaratory judgment and the seventh cause of action for breach of contract. Specifically, Branch Banking requests a declaratory judgment that it "is entitled to coverage under the Title Policy for any loss incurred or payment made as a result of the Prudential Deed of Trust" and that it is entitled to reimbursement if it pays the Prudential lien in order to enforce its rights under its own deed of trust. (Docket Entry No. 1 ¶¶ 113-14.) Furthermore, Branch Banking alleges that, because of the Prudential lien, it suffered a loss that Fidelity is obligated to compensate under the terms of the title policy. (*Id.* ¶¶ 165, 170.) The Court considers each cause of action in turn.

1. **Declaratory Judgment Claim**

Concerning the declaratory judgment, Fidelity contends that the question of its responsibility to provide coverage should not be adjudicated unless and until Branch Banking has received an adverse determination in the bankruptcy court. Fidelity cites a case from outside the Sixth Circuit holding that a court should not decide the duty to indemnify until the insured has first been held liable in an underlying suit. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).[5] However, other cases from within the Sixth Circuit (as well

---

[5] For the same proposition in the title insurance context, Fidelity cites the decision in *Lawyers Title Insurance Co. v. Synergism One Corp.*, 572 So. 2d 517, 518 (Fla. Dist. Ct. App. 1990). That case, however, involved the interpretation of specific language in a title insurance policy.

as cases decided by other federal courts) have routinely found federal subject matter jurisdiction proper in declaratory judgment actions brought by a liability insurer concerning its duty to indemnify while litigation of the underlying liability issues is still ongoing. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008); *Aetna Cas. & Sur. Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996); *Penn. Nat'l Mut. Cas. Ins. Co. v. HVAC, Inc.*, 679 F. Supp. 2d 863, 871 (E.D. Tenn. 2009); *cf. Tocci Bldg. Corp. of N.J., Inc. v. Va. Sur. Co.*, 750 F. Supp. 2d 316, 325 (D. Mass. 2010); *see generally* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2757, at 476 (3d ed. 1998) (describing the liability insurer's suit for a declaration of no duty to indemnify as a "clear" example where "a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real"). The fact that the insured, rather than the insurer, seeks the declaratory judgment in this case amounts to a distinction without a difference.

To determine whether Branch Banking presents a ripe claim for a declaratory judgment, the Court carefully reviews the language of the first cause of action. Branch Banking alleges that, having made a claim under the policy which Fidelity has declined to cover, it "is entitled to a declaration that [Branch Banking] is entitled to coverage under the Title Policy for any loss incurred or payment made as a result of the Prudential Deed of Trust." (Docket Entry No. 1 ¶ 113.) Furthermore, Branch Banking's request for declaratory relief includes a second component, which Fidelity fails to give much attention. Branch Banking asks the Court to declare that "should [Branch Banking] determine that, in its business judgment, the Prudential Deed of Trust should be paid in order for [Branch Banking] to move forward to enforce its rights under the [Branch Banking] Deed of Trust, Fidelity is obligated under the Title Policy to

---

Furthermore, Fidelity points to nothing in the policy to suggest that Florida law would govern its interpretation.

reimburse [Branch Banking] for any amounts incurred as a result of that payment." (*Id.* ¶ 114.) Having carefully reviewed the complaint, the Court agrees with Branch Banking that its first cause of action "assumes for the sake of receiving a court determination that a loss has not yet occurred and that relief is not otherwise directly available under the Title Policy." (Docket Entry No. 24, at 14 n.88; *cf. id.* at 18 n.101.) In other words, Branch Banking is asking the Court to decide whether Branch Banking would be covered under the policy if it sustained a loss or made a payment related to the Prudential lien. The request for a declaratory judgment does not ask this Court to determine whether Branch Banking has actually sustained a loss from the Prudential lien.

Properly understood, Branch Banking's declaratory judgment claim meets the Sixth Circuit ripeness standard. First, there is at least some likelihood that the alleged harm will come to pass. Branch Banking is currently litigating the priority of its lien interest against the holder of the Prudential lien. Also, Branch Banking cannot pay the Prudential lien without jeopardizing its coverage under the title policy. Second, the factual record is sufficiently developed. Branch Banking is simply asking the Court to construe the insurance policy, and the parties do not dispute the text of the policy and related agreements. *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 (6th Cir. 2008). Third, the denial of judicial relief would cause hardship to the parties. The failure to declare the parties' rights and obligations with respect to the policy would leave the parties in ongoing limbo. Adjudicating Branch Banking's claim for declaratory relief will provide certainty with respect to the available policy coverage if Branch Banking suffers a loss because of the Prudential lien or pro-actively decides to pay the outstanding lien.

In addition to satisfying the ripeness inquiry, Branch Banking's declaratory judgment claim is also appropriate for the exercise of the Court's discretionary jurisdiction. Pursuant to 28 U.S.C.A. § 2201 (2006), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Sixth Circuit has prescribed a five-factor test for determining whether a district court should exercise its discretion in a given declaratory judgment action:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

*Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 453 (6th Cir. 2003) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

Applied to this case, all five factors weigh in favor of exercising jurisdiction. While the bankruptcy court will decide the priority and scope of the liens, the question of insurance coverage is not before it. *Northland Ins. Co.*, 327 F.3d at 454. Furthermore, because Fidelity is not a party to the bankruptcy action, it is not bound by the bankruptcy court's determination of relevant issues in this case. *Id.*; *Flowers*, 513 F.3d at 556. Therefore, a declaratory judgment concerning the availability of coverage in the event of a higher-priority lien and/or the payment of such a lien would settle much of the controversy between Fidelity and Branch Banking.

Similarly, the declaratory judgment action will clarify the legal relations at issue. Particularly, it will rescue the parties from limbo over the consequences for policy coverage if Branch Banking decides to pay the Prudential lien in order to enforce its rights under its own

10

lien.  Although Branch Banking has not yet made such a payment, the declaratory judgment statute does not require Branch Banking to risk voiding its policy coverage in order to determine its rights under the policy.  In the words of the Supreme Court, "[t]he factual and legal dimensions of the dispute are well defined and, but for" Branch Banking's failure to pay off the Prudential lien, "nothing about the dispute would render it unfit for judicial resolution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007).

This declaratory judgment action does not present issues of procedural fencing or a race to res judicata.  Courts usually give the declaratory plaintiff "'the benefit of the doubt'" when the declaratory action follows, rather than immediately precedes, another pending suit that raises related issues.  *See Flowers*, 513 F.3d at 558 (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004)).  Because the other action is in federal bankruptcy court, the declaratory judgment will not increase friction with or encroach on the jurisdiction of state courts.  In short, the Court chooses to exercise its discretionary jurisdiction over Branch Banking's ripe cause of action for a declaratory judgment.

### 2. Breach of Contract Claim

Last among Branch Banking's claims, the Court considers the ripeness of Branch Banking's seventh cause of action for breach of contract.  Here, Branch Banking alleges that, because of the existence of the Prudential lien, it has already suffered a compensable loss under the title policy and is entitled to satisfy the Prudential lien to protect its right under its own lien. (Docket Entry No. 1 ¶¶ 167-68.)  By failing to satisfy the Prudential lien or otherwise remove its priority over Branch Banking's lien, Fidelity has allegedly breached the policy contract.  (*Id.* ¶¶ 170-71.)  In its opposition memorandum, Branch Banking acknowledges that its claim for breach of the title policy is different from its declaratory judgment claim.  Whereas the request for a

declaratory judgment assumed that Branch Banking had not yet sustained a loss entitling it to relief under the title policy, the breach of contract allegations in the seventh cause of action maintain that Branch Banking has sustained a loss and is entitled to recover under the title policy. (Docket Entry No. 24, at 14 n.88.)

As Fidelity points out, it does not incur liability under the policy until the final disposition of litigation "adverse to the title or to the lien of the insured mortgage, as insured." (Docket Entry No. 1-13 ¶ 8(b).) At present, no such determination adverse to Branch Banking's interest has been reached. That said, it is anticipated that in short order the bankruptcy court will try the adversary proceeding consolidated with the motion for relief from stay filed by the holder of the Prudential lien. By Fidelity's own admission, the adjudication of the bankruptcy proceeding will determine whether Branch Banking has sustained a loss within the terms of the policy.

Given the Court's analysis of the first six claims pled in Branch Banking's complaint and the status of the bankruptcy proceedings, the Court will also allow litigation to proceed on Branch Banking's seventh cause of action. Because the bankruptcy court may make a title determination adverse to Branch Banking's lien, there is some likelihood that the alleged breach will come to pass. The relevant factual record has been sufficiently developed through discovery in the bankruptcy proceedings and the discovery continuing to take place in Fidelity's own lawsuit against 1st Trust.[6] Finally, since Branch Banking's lawsuit encapsulates all of its related

---

[6] Although Branch Banking discusses the Fidelity action against 1st Trust in its opposition memorandum, Fidelity conspicuously fails to reconcile the ongoing discovery in that action with its attempt to have this litigation dismissed as unripe. The Fidelity action hinges on the defendants' potential exposure of Fidelity to liability under the title policy by failure to satisfy the Prudential lien. If Fidelity may continue to pursue that action before the conclusion of the bankruptcy litigation, the Court is hard-pressed to discern why it should treat this case any differently.

legal claims arising out of the same secured transaction, postponing one of those claims until a later day would create needless inefficiency for the parties.

## III. Non-Jurisdictional Arguments

Besides its contention that Branch Banking's claims are not ripe, Fidelity makes other arguments that, in reality, stray beyond the question of jurisdiction. For example, Fidelity asserts that Branch Banking's tort claims and Tennessee Consumer Protection Act claim are barred by policy language limiting remedies for losses arising out of the status of Branch Banking's lien. Also, Fidelity claims (for the first time in its reply brief) that 1st Trust's agency relationship with Fidelity did not extend to 1st Trust's conduct in closing the loan. These arguments pertain to the merits of the case, rather than the Court's jurisdiction. Therefore, as to these alternative grounds for relief, the Court denies Defendant's motion without prejudice to raise them later in a procedurally proper manner.

## **CONCLUSION**

For all of the reasons stated, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket Entry No. 16) will be denied. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant shall file and serve its responsive pleading within fourteen (14) days after receiving notice of this Court's decision.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE